United States District Court
Southern District of Texas
**ENTERED**
September 05, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DUPRE LIPKINS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-3094 |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Dupre Lipkins, formerly incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ), filed a *pro se* petition for a writ of habeas corpus and a memorandum in support (Dkt. 1; Dkt. 4).   The respondent filed an answer (Dkt. 14) seeking dismissal of all claims, along with a copy of the state court records (Dkt. 15).  Lipkins responded (Dkt. 16).  Having considered the petition, briefing, all matters of record, and the applicable legal authorities, the Court determines that the petition should be **dismissed** for the reasons that follow.

## I.    BACKGROUND

### A.    Procedural Background

On July 9, 2019, based on a guilty plea, Lipkins was convicted of delivery of a controlled substance, enhanced, in Cause 18-DCR-084818, 400th District Court of Fort Bend County, Hon. Maggie Perez-Jaramillo presiding. The court sentenced Lipkins to eight years in TDCJ (Dkt. 1, at 2-3; Dkt. 14, at 2-3; Dkt. 15-7, at 32-36).  Lipkins waived his right to appeal and did not file an appeal.

On November 6, 2019, Lipkins executed an application for state habeas relief (WR-91,126-01) (*id*. at 37-57). The trial court entered findings of fact and conclusions of law recommending denial of relief (*id*. at 89-96). On May 6, 2020, the Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing and on the court's independent review of the record (Dkt. 15-1).

On August 28, 2020, Lipkins filed his petition for a writ of habeas corpus in these federal proceedings (Dkt. 1).

## B. <u>Factual Background</u>

Lipkins was charged with delivery of a controlled substance in a drug-free zone, enhanced, Cause No. 18-DCR-084818, and evading arrest, enhanced, Cause No 18-DCR-083642 (Dkt. 15-7, at 11 (indictment for 18-DCR-084818); *id*. at 7-9 (indictment for 18-DCR-083642)). On July 9, 2019, the day the cases were set for trial, Lipkins pleaded guilty to delivery of a controlled substance (*id*. at 22-28 (signed written plea of guilty); Dkt. 15-4 (transcript of plea proceedings)). The written plea contains the following written confession:

> [I]n Fort Bend County, Texas, on 07/23/2018[,] I did then and there unlawfully knowingly or intentionally deliver, by actual transfer, to C. Combs and A. Barlow, a controlled substance, namely cocaine, in an amount by aggregate weight, including any adulterants and dilutants, of less than 1 gram[.]

(Dkt. 15-7, at 24). Lipkins signed the written plea agreement initialed each paragraph "to stipulate and confess to" the allegations, including the paragraph above (*id*. at 24-25). Based on the plea agreement, the prosecution moved to dismiss the charge of evading

arrest, enhanced, and abandoned the allegation that Lipkins had delivered a controlled substance in a drug-free zone (*id*. at 10-11).

At the plea proceeding, the trial judge explained to Lipkins that the punishment range for delivery of a controlled substance, based on enhancements for his prior convictions, was 2-20 years in TDCJ.  After stating that he understood the range of punishment, Lipkins pleaded guilty to the offense and "true" to both enhancement paragraphs (Dkt. 15-4, at 4-5).  The court then asked Lipkins a series of questions about his plea:

> THE COURT:  . . . And are you pleading today freely and voluntarily?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: In other words, no one is forcing you to make this plea?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: And other than the plea agreement that [defense counsel] has arranged for you with the State, has anyone offered you anything else in exchange for your plea?
>
> THE DEFENDANT: No, ma'am.
> . . .
>
> THE COURT: And you've had an opportunity to visit with [defense counsel], and he's explained everything that's happening today?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you were set for, actually, a jury trial today; but you have decided you are going to give that up and go ahead and take a plea on that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And so you do understand that you have the right to have a jury trial?

THE DEFENDANT: I understand.

THE COURT: And you're waiving that? In other words, you're giving up your right to have your jury trial?

THE DEFENDANT: Yes, ma'am.

THE COURT: If your case were tried to the jury, you would also have the right to an appeal. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: And are you also waiving that or giving that appeal up?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. And you've gone over this document with [defense counsel] that I'm holding up for you; it's called the plea paperwork?

THE DEFENDANT: Yes, ma'am.

THE COURT: You signed this and initialed it with his assistance. Did you understand what you were doing?

THE DEFENDANT: Yes, ma'am.

THE COURT: Very well. . . .

(*id*. at 5-7).    The judge then sentenced Lipkins to eight years in TDCJ, in accordance with

the parties' agreed punishment recommendation (Dkt. 15-7, at 32).  After the sentencing,

Lipkins made additional comments to the court:

THE DEFENDANT:  And the thing is this here, I know I ain't going to win with the jury.  But they -- She know, and he know. They know it ain't me. Yeah, nobody did no voice -- Don't nobody here know me by my voice.  Do you know me by my voice, ma'am?  No, she do not.

 THE COURT: Mr. Lipkins --

THE DEFENDANT: I'm just saying --

THE COURT: -- I understand your frustration, but the only way those things can be hashed out in a courtroom is through trial. And I understand you discussed that with [defense counsel], and you decided to take a plea.

THE DEFENDANT: That's what I'm taking.

THE COURT: That's your choice. And if you want to go to trial, it's your decision.

THE DEFENDANT: I'm scared.

THE COURT: [Defense counsel] is an excellent lawyer, but I'm sure he's given you really good advice. And if this is the best decision for you, then good luck to you, sir.

THE DEFENDANT: I'll take it. I'll take it. I understand, ma'am. I just wanted to get that in.

(Dkt. 15-4 at 10-11).

Lipkins filed an application for state habeas relief, bringing four claims for relief: (1) his trial counsel was constitutionally ineffective in connection with the plea negotiations and his failure to file motions, including a motion for background check on a police officer, a motion for voice analysis on law enforcement's video recording, and a motion to suppress; (2) he was indicted with nine co-defendants who had "nothing to do with [his] case"; (3) his trial counsel coerced him to sign the plea agreement for eight years in TDCJ by telling him that an officer would testify against him at trial, the jury would believe the officer, and Lipkins would get "25 years or more"; and, (4) his trial counsel failed to file pre-trial motions, including a motion for voice analysis and a motion for exculpatory evidence (Dkt. 15-7, at 42-48).

Lipkins' counsel submitted an affidavit responding to the habeas claims (*id*. at 73-84), and provided the following background information:

Mr. Lipkins' drug case involved two undercover officers employed by the Texas Department of Public Safety (TDPS). The 2 TDPS officers participated in narcotics purchases which were video recorded. Mr. Lipkins purportedly was a part of selling crack cocaine rocks to the TDPS officers. The TDPS officers stated that the person who sold the crack rocks to them was a black male identifying himself as "Capri." Because the TDPS officers only knew the black male who sold them the drugs by the name "Capri," they went to the Richmond Police Department and learned from a Richmond officer named Ganey, who purportedly stated that he knew the black male with the street name of "Capri" as Mr. Lipkins. Based upon this information, the drug charges were filed against Mr. Lipkins.

(*id*. at 77).

In response to Lipkins' habeas claim regarding his plea, counsel's affidavit stated that the prosecution initially offered to recommend an eight-year sentence in the drug case, and to seek dismissal of the case for evasion of arrest, if Lipkins pleaded guilty to the drug charge (*id*. at 74). After Lipkins informed him "that he was not pleading guilty to anything and that he wanted to set his case for jury trial," counsel then completed a "reset form" to schedule a trial and Lipkins "willingly signed" the form (*id*. at 75). He then met with Lipkins to review the offense reports, watch the video recordings, and discuss possible outcomes if Lipkins were convicted, in light of his prior criminal history (*id*.). Their trial strategy was to argue that Lipkins had been improperly identified:

The issue which Mr. Lipkins and I chose to focus on was that Mr. Lipkins informed me during pre-trial discussions that his street name was not "Capri" but instead was "Prelo." The name "Prelo" was also tattooed on Mr. Lipkins' right forearm. The defensive theory I intended and was prepared to present in trial was that Officer Ganey incorrectly concluded that Mr. Lipkins was the person the TDPS officers identified as "Capri." I informed Mr. Lipkins that I would question Officer Ganey about how he reached the conclusion, erroneously or otherwise, that Mr. Lipkins' name was "Capri" in an attempt to discredit the TDPS officers' identification of Mr. Lipkins' as the person who sold them the cocaine. I would also attempt to have the TDPS officers (and possibly Officer Ganey, if he testified) look at Mr. Lipkins' forearm, in

the jury's presence, to see the "Prelo" street name tattooed there to corroborate our theory that Mr. Lipkins was not "Capri."

(*id*. at 78).  However, on the day of trial, as a venire panel entered the courtroom, Lipkins

changed his mind (*id*. at 79).  He then directed his counsel to ask the prosecution about a

plea:

> On the day of his scheduled trial after he changed his mind about proceeding to trial, Mr. Lipkins asked me to inquire whether the State would offer less than 8 years in prison, and the prosecutor refused. At least during my time representing Mr. Lipkins, the State never tendered an offer less than 8 years in prison to Mr. Lipkins. In the end, the State allowed Mr. Lipkin to accept the 8 year prison plea offer, which Mr. Lipkins did.

(*id*. at 77).  Counsel stated that he believed that his client's plea was knowing and voluntary:

> I did not make any statements to Mr. Lipkins which could be construed as coercing, convincing, or influencing Mr. Lipkins to accept the State's plea offer and to plead guilty. During my time with Mr. Lipkins, I explained to him the law, the facts, and the information necessary for him to evaluate whether to plead guilty or to proceed to trial. I was fine with Mr. Lipkins pleading guilty or proceeding to trial. I was ready to represent Mr. Lipkins in trial and had a strategy on how best to attack the State's case. I also understand that Mr. Lipkins could plead guilty to avoid a trial, especially in light of the potentially lengthy sentence he could receive in the event he were convicted. My main concern was making sure Mr. Lipkins understood all that I had discussed and explained to him so he could knowingly decide whether to plead guilty or proceed to trial.
>
> I believe that Mr. Lipkins' guilty plea was knowingly and voluntarily entered. I made sure Mr. Lipkins was aware of all of his rights and legal options, the State's evidence and applicable law concerning his cases, and the intended strategies when proceeding to trial. Mr. Lipkins made the personal choice to accept the State's plea offer of 8 years in prison (with a dismissal of the evading charge) and to plead guilty to the drug charge.

(*id*. at 83-84).

Counsel's affidavit also responded to Lipkins' habeas claims about pretrial motions.

Regarding a voice analysis on law enforcement's video recording, he stated that he and

Lipkins never discussed a need for voice analysis (*id.* at 77, 81-82).  Regarding the police

officer, counsel explained that he did not believe a background check was necessary:

> I was never made aware of any information reflecting that the undercover
> officers had previously had any contact or communication with Mr. Lipkins
> or any reason to have any angst with him to lie about his involvement in the
> drug transaction. Additionally, all that the undercover officers said occurred
> was depicted on the video recordings.

(*id.* at 80).  Regarding a request for exculpatory evidence, counsel stated that he did not

believe such a request was necessary and, furthermore, that he had not learned of any

potentially exculpatory evidence regarding Lipkins that the prosecution had failed to

disclose:

> I did not believe that there was a need to file a motion or request for
> exculpatory evidence. Having formerly been a prosecutor, I know that the
> State has a continuing duty to disclose exculpatory information or evidence
> related to Mr. Lipkins' cases, regardless of whether a motion is filed or a
> court grants such a motion. Additionally, I am aware of the Michael Morton
> Act discovery rules which also compel disclosure of exculpatory evidence.
> Plus, a high majority of my criminal practice is in Fort Bend County so I
> know all the prosecutors and have never had any negative experience with
> disclosure of any evidence, including exculpatory evidence. Regardless,
> from the time of my representation to the present, I have not learned of any
> potentially exculpatory information or evidence related to Mr. Lipkins' cases
> which the State failed to disclose.

(*id.* at 82).  Finally, counsel stated that, although he believed a motion to suppress was not

warranted based on his review of the evidence, he had told his client that he would file it

after the jury was selected:

> I did not believe that it was beneficial or necessary to file any motion to
> suppress evidence. I found no legal basis to seek suppression on any
> evidence. However, in an effort to placate Mr. Lipkins, I informed him that
> I would file and urge a suppression motion concerning any testimony from
> the TDPS officers and Officer Ganey identifying Mr. Lipkins as the person
> who participated in the drug transaction. I also informed Mr. Lipkins that this

suppression motion would be filed and urged after the jury was seated so that the State could not appeal any ruling to suppress evidence. While I believed such a motion to suppress was a futile effort, I thought it would be necessary to maintain a good working relationship with Mr. Lipkins during my representation.

(*id.* at 81; *see id.* at 78-79).

The state habeas court determined that the assertions in counsel's affidavit were "true and credible" and that counsel had not coerced or influenced Lipkins to plead guilty (*id.* at 90, 93). Based on the record of the plea proceedings, the court found that Lipkins' statements reflected that he accepted the plea offer because of his belief that he would be convicted after trial (*id.* at 94). The court concluded that Lipkins had been afforded the effective assistance of counsel at trial, that his guilty plea was knowingly and voluntarily entered, and that he had failed to establish that he was improperly denied his right to confront witnesses, and thus recommended denial of habeas relief (*id.*). The Court of Criminal Appeal denied Lipkins' application on the findings of the trial court without a hearing and on the court's independent review of the record.

Lipkins' federal petition brings eight claims for relief, including a claim that his counsel coerced him to plead guilty and multiple claims that his counsel was constitutionally ineffective. He also submitted a memorandum presenting arguments that he had requested suppression of the videotape from the scene because it reflected no faces, money, or drugs, but only a voice recording; that his counsel had not prepared for trial and told him to take the eight-year offer because, if Officer Ganey testified, he would receive a 25-year sentence; and that he had requested that his counsel file multiple pre-trial motions but that, on the day of trial, the judge stated that no motions had been filed, among other

arguments (Dkt. 4).  Along with the memorandum, Lipkins submitted four exhibits: an email from a prosecutor to his defense counsel regarding the basis of an officer's identification of Lipkins; screenshots of text messages between two persons, identified by Lipkins as his counsel and a law enforcement officer, regarding photographs and identification of Lipkins; the indictment of Lipkins for delivery of a controlled substance in a drug-free zone; and the judgment against him(*id.* at 12-17).

## II.   LEGAL STANDARDS

### A.   *Pro Se* Pleadings

Federal courts do not hold *pro se* habeas petitions "to the same stringent and rigorous standards as . . . pleadings filed by lawyers."  *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (cleaned up).  "The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction."  *Id.*

### B.   The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas corpus relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act (AEDPA).  *See Woodford v. Garceau*, 538 U.S. 202, 205-08 (2003); *Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997).  Under AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002); *Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012).

Federal courts look to the "last reasoned opinion" as the state court's "decision." *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012); *see Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "Where a state court's decision is unaccompanied by an explanation," and the lower courts did not issue a reasoned opinion, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 526 U.S. 86, 98 (2011); *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding that there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

Review under AEDPA is "highly deferential" to the state court's decision. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). To merit relief under AEDPA, a petitioner may not merely show legal error in the state court's "decision." *White v. Woodall*, 572 U.S. 415, 419 (2014) (stating being "merely wrong" or in "clear error" will not suffice federal relief under AEDPA). AEDPA review exists only to "guard against extreme malfunctions in the state criminal justice systems." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up). "[F]ocus[ing] on what a state court knew and did," *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), AEDPA requires inmates to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woodall*, 572 U.S. at 419-20 (cleaned up). "If

this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this Court may grant habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. *See Kittelson v. Dretke*, 426 F.3d 306, 318 (5th Cir. 2005). Under the "contrary to" clause, this Court may afford habeas relief if the state court "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015) (cleaned up). To constitute an "unreasonable application" of clearly established federal law, the state court's determination "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods*, 575 U.S. at 316 (cleaned up).

On factual issues, AEDPA precludes federal habeas relief unless the state court's adjudication of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *see Martinez v. Caldwell*, 644 F.3d 238, 241-42 (5th Cir. 2011).

## III.   <u>ANALYSIS</u>

Lipkins' federal petition raises eight claims for relief: (1) his trial counsel was constitutionally ineffective because he set the case for trial without consulting with Lipkins; (2) he was charged, indicted, convicted and sentenced with nine co-defendants; (3) his trial counsel was constitutionally ineffective because he did not file motions for a

pretrial hearing, to suppress evidence, for voice analysis, or to have drugs tested; (4) his trial counsel was constitutionally ineffective because he failed to file motions to suppress videotaped evidence; (5) his trial counsel was constitutionally ineffective because he failed to file a motion for voice analysis; (6) his trial counsel was constitutionally ineffective because he failed to file a motion for a background check on the officer who claimed that Lipkins sold him drugs; (7) he pleaded guilty due to coercion from his trial counsel and duress; and (8) his trial counsel was constitutionally ineffective because he failed to file a motion to have drugs tested.

### A.      Jurisdiction

As a preliminary matter, the Court notes that Lipkins has been released from TDCJ. *See* Dkt. 31 (change of address filed by Lipkins on Jan. 27, 2023).  A court may grant habeas relief under 28 U.S.C. § 2254 only on the ground that a petitioner is "in custody" in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a) (emphasis added); *see* 28 U.S.C. § 2241(c)(3).

The record does not clearly indicate whether Lipkins remains "in custody" for purposes of the habeas statutes. However, because he was sentenced to eight years in TDCJ on July 9, 2019, with 340 days of jail credit (Dkt. 15-7, at 32), it appears that his full sentence has not yet expired.  If Lipkins is not in custody, his petition must be dismissed for lack of jurisdiction.

### B.      Voluntariness of Guilty Plea (Claim 7)

In Claim 7, Lipkins alleges "compulsion of a person by imprisonment by threat or by a show of force that cannot be resisted" (Dkt. 1, at 13).  In support of his claim, Lipkins' petition states as follows:

> At the day of trial from time I sit down, [defense counsel] started right off saying, you need to take the 8 years.  I ask[ed] [defense counsel]  where [is] the Jury, are we going to pick the Jury.  [Defense counsel] said the Jury is going to get us. [Defense counsel]  said he [had] been doing this for 35 years [and] they will get us for [sure].  Over and over [defense counsel] would say take the 8 years.  Don't make the DA mad.  If you don't take the 8 years they [are] going to use Agent Ganey as Evidence and he will testify against you and that will get you 25 years for [sure].  Another 20 min[utes go] by and I ask [defense counsel] what are we going to do sit here[? Or are] we going to trial.  [Defense counsel] [got] up and [went] over to the DA table and you hear nothing But laughing[,] then [defense counsel] came back to the table where I am at and [said] things don't look good now.  The DA is pushing for 35 years.  But I still can get you the 8 years.  Over and over[defense counsel] would say he get[s] to go home every day with my age I might not make [sic] But if I take the 8 years I'll be home in 2 years.  Over and over take the 8 years. I was scare[d] so I took the 8 years.  I was so scare[d], without any help I know I was going to get 25 years. So I took the 8 years.

(*id*.; *see* Dkt. 16, at 12-13).  The Court construes his claim as alleging that his trial counsel coerced him to plead guilty and that his plea was not voluntary.

A plea that is not "voluntarily and intelligently made has been obtained in violation of due process and is void." *Matthew v. Johnson*, 201 F.3d 353, 364 (5th Cir. 2000); *see Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).  For a plea to be valid, the defendant must have notice of the charges against him, must understand the constitutional protections waived, and must have access to the advice of competent counsel.  *United States v. Shepherd*, 880 F.3d 734, 740-41 (5th Cir. 2018); *see Matthew*, 201 F.3d at 365.  When the defendant makes statements "that his plea was

knowing and voluntary and that he understood the rights he was waiving," the statements "create a presumption that in fact the plea is valid." *United States v. Washington*, 480 F.3d 309, 316 (5th Cir. 2007). Moreover, "a defense lawyer's stern warnings about the client's chances of success at trial, the potential for prison time, and the lawyer's potential withdrawal do not compromise voluntariness." *United States v. Cothran*, 302 F.3d 279, 284 (5th Cir. 2002).

On habeas review, a guilty plea will be upheld "when it is entered knowingly, voluntarily, and intelligently—that is, when the defendant understands the charge and its consequence." *Trotter v. Vannoy*, 695 F. App'x 738, 741 (5th Cir. 2017) (citing, *inter alia*, *Montoya v. Johnson*, 226 F.3d 399, 405 (5th Cir. 2000)). "[A] plea's validity may not be collaterally attacked merely because the defendant made what turned out, in retrospect, to be a poor deal." *Bradshaw*, 545 U.S. at 186. Rather, a petitioner must show "either that he made the unfavorable plea on the constitutionally defective advice of counsel or that he could not have understood the terms of the bargain he and [the prosecution] agreed to." *Id.* (cleaned up).

When an ineffective-assistance claim focuses on a plea process, courts analyze "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (cleaned up). As with other claims of ineffective assistance of counsel, the petitioner must show not only that his counsel's performance was deficient, but also that he was prejudiced by counsel's performance. *Shepherd*, 880 F.3d at 741 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). For the prejudice requirement, a petitioner must show "a reasonable probability that, but for counsel's errors,

he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 743 (cleaned up).  In many guilty plea cases, the prejudice inquiry focuses on whether counsel's alleged errors "likely would have changed the outcome" of the proceeding.  *Matthew*, 201 F.3d at 363 n.14 (cleaned up).

Here, Lipkins alleges that his trial counsel coerced him to accept a plea deal for an eight-year sentence and that he accepted the deal because he was scared.  However, as recounted above, Lipkins affirmatively stated at his plea proceeding that he understood the range of punishment; that he was pleading freely and voluntarily; that no one was forcing him to make the plea; that he understood he had the right to proceed with the jury trial scheduled for that day; that he understood he was giving up his right to appeal; that his counsel had gone over the plea paperwork with him; that he had signed and initialed it with his counsel's assistance; and that he understood what he was doing by entering a guilty plea (Dkt. 15-4 at 5-7).  Although Lipkins stated that he doubted the validity of a voice identification and that he was scared, he then repeated his affirmation to the court that he wanted to accept the plea deal (*id*. at 10-11).  He also signed a written guilty plea and initialed each admonition (Dkt. 15-7, at 24-25).  The state habeas court, relying on counsel's affidavit and the record of the plea proceedings, determined that counsel had not coerced or influenced Lipkins to plead guilty, that Lipkins had made statements reflecting that he accepted the plea offer because of his belief that he would be convicted after trial, and that the guilty plea was knowingly and voluntarily entered (*id.* at 89-94).

In these proceedings, Lipkins' claim that his plea was not voluntary is insufficient to overcome his declarations in the trial court, which are entitled to deference and a

presumption of regularity.  *See United States v. Kelly*, 915 F.3d 344, 349 n.4 (5th Cir. 2019)

("Solemn declarations in open court carry a strong presumption of verity" (cleaned up));

*Washington*, 480 F.3d at 316 (defendant's statements that his plea was knowing and

voluntary "create a presumption that in fact the plea is valid") (cleaned up); *Carter v.

Collins*, 918 F.2d 1198, 1202 n.4 (5th Cir. 1990) (trial court admonishments entitled to

presumption of correctness under 28 U.S.C. §2254(d)).   Lipkins has not presented facts

that could show that his counsel's advice was constitutionally defective or that he "could

not have understood" the terms of his plea deal.  *See Bradshaw*, 545 U.S. at 186.  In the

face of strong record evidence that his guilty plea was voluntary, Lipkins has not met his

burden to demonstrate that habeas relief is warranted under § 2254(d).

### C.   Ineffective Assistance of Counsel (Claims 1, 3-6, & 8)

Lipkins brings multiple claims for habeas relief based on his counsel's alleged

ineffectiveness.  He alleges that his counsel was constitutionally ineffective because he

failed to consult Lipkins before setting his case for trial (Claim 1); failed to seek a pre-trial

hearing (Claim 3); and failed to file pre-trial motions for suppression of video evidence

(Claim 4), voice analysis of video evidence (Claim 5), a background check on the

undercover officer who accused Lipkins of selling drugs (Claim 6), or testing of the drugs

at issue (Claim 8).  The state habeas court determined, based in part on counsel's "true and

credible" affidavit, that Lipkins had been afforded the effective assistance of counsel at

trial (Dkt. 15-7, at 90, 94).  Based on this determination, the Court of Criminal Appeals

denied relief.

A petitioner bringing an ineffective-assistance-of-counsel claim must show that "in light of the circumstances as they appeared at the time of the conduct, counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms." *Rhoades v. Davis*, 852 F.3d 422, 431-32 (5th Cir. 2017) (quoting *Strickland*, 466 U.S. at 687-89, 694) (cleaned up). A petitioner also must demonstrate prejudice by showing "a reasonable probability that but for counsel's deficiencies, the result of the proceeding would have been different." *Id*. at 432. When a defendant pleads guilty voluntarily, all habeas claims regarding proceedings before his plea are waived:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . .

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). *See United States v. Samaniego*, 532 F. App'x 531, 534 (5th Cir. 2013) ("When a defendant enters a voluntary guilty plea, all nonjurisdictional defects in the proceedings are waived, including ineffective assistance of counsel, 'except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary,'" quoting *United States v. Glinsey,* 209 F.3d 386, 392 (5th Cir. 2000)); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).

Here, for each instance in which Lipkins alleges that his counsel was ineffective, he states in his petition that he had discussed these issues with trial counsel on or before the

day the case was set for trial, which is the day he entered his guilty plea.[1]  As held above,

Lipkins has not demonstrated that his guilty plea was involuntary.  Therefore, all of his

ineffective-assistance-of-counsel claims are waived.  Additionally, his federal petition does

not demonstrate that his counsel's performance fell below an objective standard of

reasonableness in connection with any of the alleged deficiencies in counsel's

performance, and further fails to demonstrate a reasonable probability that the result of the

proceeding would have been different but for those alleged deficiencies.  He thus fails to

show that the state habeas court's adjudication of his habeas claims was contrary to, or an

unreasonable application of, *Strickland*.  *See* 28 U.S.C. § 2254(d).

     Lipkins has not shown that he is entitled to federal habeas relief on Claims 1, 3, 4,

5, 6, or 8, and the claims will be dismissed.

### D.    Indictment with Nine Co-Defendants (Claim 2)

     In Claim 2, Lipkins seeks habeas relief because he was charged, indicted, convicted,

and sentenced with nine co-defendants (Dkt. 1, at 6).  His petition appears to argue that,

because the co-defendants' alleged conduct took place at a physical distance from Lipkins'

---

[1]    *See* Dkt. 1, at 6 (in Claim 1, Lipkins alleges that his counsel told the judge to set the case for trial on the "very first day" that counsel was appointed to represent him); *id*. at 7 (in Claim 3, Lipkins alleges that he asked his counsel to file motions for a pretrial hearing, suppression of evidence, voice analysis, and drug testing but, on the day of trial, the judge stated that no motions had been filed); *id*.  (in Claim 4, Lipkins alleges that counsel told him on the day of trial that he had filed a motion to suppress the video but the judge stated that no motions had been filed); *id*. at 11 (in Claim 5, Lipkins alleges that he had asked counsel to file a motion for voice analysis but, on the day of trial, the judge said that no motions had been filed); *id*. at 12 (in Claim 6, Lipkins alleges that he asked his counsel to file a motion for a background check on an undercover officer for possible impeachment at trial but that counsel did not believe there was a need for the background check); *id*. at 14 (in Claim 8, Lipkins alleges that his counsel failed to file a motion to have the drugs tested but told Lipkins that the prosecutor had filed one).

conduct, the other persons in the indictment should have been witnesses rather than co-defendants. *See id.* (stating that one co-defendant's conduct "happen[ed] on Collins Street" and that Lipkin's conduct "happen[ed] on Maiden Lane . . . over . . . 1000 feet apart"). In his briefing, he argues that the indictment was legally insufficient because of the co-defendants included on his indictment (Dkt. 16, at 3-4). Lipkins presented this claim to the state habeas court, which denied relief. *See* Dkt. 15-7, at 44-45 (claiming that he was indicted with nine co-defendants who had nothing to do with his case and that he had requested that his counsel file a motion to confront the co-defendants as witnesses).

In certain cases, a defective indictment can deprive the state court of jurisdiction. Although the absence of a convicting court's jurisdiction is a basis for a due-process claim in federal habeas, a federal habeas court "need not address" the issue when "the state courts have held that an indictment is sufficient under state law." *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994). The Fifth Circuit "has consistently demonstrated deference to state court determinations of state law, including jurisdictional determinations based on state law." *Evans v. Cain*, 577 F.3d 620, 624 (5th Cir. 2009).

In this case, because Lipkins presented his claim his state habeas application, the Court of Criminal Appeals' denial of relief was an implicit holding that the state trial court had jurisdiction. *See Evans*, 577 F.3d at 624-25 ("An issue may be squarely presented to and decided by the state's highest court when the petitioner presents the argument in his application for postconviction relief and the state's highest court denies that application without written order"). Therefore, to the extent Lipkins brings a federal habeas claim that the indictment against him was defective, his claim must fail because federal habeas review

20 / 22

of his jurisdictional claim is precluded.  Because his claim presents no basis for federal habeas relief, it will be dismissed.

## IV.   **CERTIFICATE OF APPEALABILITY**

Habeas corpus actions under 28 U.S.C. § 2254 or § 2255 require a certificate of appealability to proceed on appeal.  28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 336 (cleaned up).  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484; *see Pierre v. Hooper*, 51 F.4th 135, 137 (5th Cir. 2022) (a certificate of appealability may not issue based solely on a debatable procedural ruling).

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find its assessment of the claims debatable or wrong. Because the petitioner does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V.    <u>CONCLUSION</u>

For the reasons stated above the Court **ORDERS** as follows:

1.    Lipkins' petition for a writ of habeas corpus (Dkt. 1) is **DISMISSED with prejudice**.

2.    A certificate of appealability is **DENIED**.

The Clerk will provide copies of this order to the parties.

SIGNED at Houston, Texas, on _____ September 5 _____, 2023.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE